**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Carlson Holdings, Inc.,
Carlson Companies, Inc.,
Carlson Real Estate Company,
and/or any subsidiary,

Plaintiffs,

v.

Civil No. 00-2080 RHK/JMM

**MEMORANDUM OPINION AND ORDER**

NAFCO Insurance Company, Ltd.,
Zurich U.S. Insurance Company, a/k/a
Zurich American Insurance,
Hartford Fire Insurance Company,
TIG Insurance Company,
Scor Reinsurance Company,
Sorema Reinsurance Company,
Munich Reinsurance Company,
Genesis Insurance Company,
General Reinsurance Corporation, USA,
Swiss Reinsurance America Corporation,
Swiss Reinsurance Company, and
NAC Reinsurance Corporation,

Defendants.

---

Richard J. Nygaard, Michael R. Docherty, Michael W. Unger, Patrick Robben, and Caroline E. Ostrom, Rider Bennett Egan & Arundel, Minneapolis, Minnesota, for Plaintiffs.

Lawrence Zelle, John B. Massopust, and Daniel J. Millea, Zelle Hofmann Voelbel & Gette, Minneapolis, Minnesota, for Defendant NAFCO Insurance Co., Ltd.

Jerome B. Abrams, Abrams & Smith, Minneapolis, Minnesota, for Defendant Zurich U.S. Insurance Co., a/k/a Zurich American Insurance.



FILED JAN 08 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD JAN 08 2001
DEPUTY CLERK

Bradley M. Jones, Stacy A. Broman, and Renee K. Fearing, Meagher & Geer, Minneapolis, Minnesota, and David C. Butman, David E. Trainor, and Robert S. Soderstrom, Tressler Soderstrom Maloney & Priess, Chicago, Illinois, for Defendant Hartford Fire Insurance Co.

Thomas P. Kane and Bethany K. Culp, Hinshaw & Culbertson, Minneapolis, Minnesota, and Paula P. Skalaban and Walter J. Andrews, Shaw Pittman, McLean, Virginia, for Defendant TIG Insurance Co.

Kurtis A. Greenley, Lindquist & Vennum, Minneapolis, Minnesota, for Defendants Scor Reinsurance Co., Sorema Reinsurance Co., NAC Reinsurance Corp. and Munich Reinsurance Co.

Bradley M. Jones, Stacy A. Broman, and Renee K. Fearing, Meagher & Geer, Minneapolis, Minnesota, for Defendants Genesis Insurance Co. and General Reinsurance Corp.

John M. Anderson and Shalanda D. Ballard, Bassford Lockhart Truesdell & Briggs, Minneapolis, Minnesota, for Defendants Swiss Reinsurance Co. and Swiss Reinsurance America Corp.

---

## INTRODUCTION

NAFCO Insurance Company ("NAFCO") insured Plaintiffs (hereinafter referred to collectively as "Carlson") under an "All Risk" property insurance policy. The remaining Defendants then reinsured NAFCO's policy with Carlson. Carlson submitted a claim with NAFCO for expenses it incurred while preparing for the year 2000 date (hereinafter "Y2K") problem with its computers. Before NAFCO could fully investigate Carlson's claim, Carlson filed suit against NAFCO and its reinsurers[1] seeking a judgment declaring that the NAFCO policy covers Carlson's insurance claims.

[1] A reinsurer is an insurance carrier which insures insurers. Black's Law Dictionary, 1288 (6th ed. 1990). Reinsurance can be described as insurance for insurance companies.

Carlson commenced this action in Hennepin County District Court seeking a declaratory judgment pursuant to Minn. Stat. § 555.01, et seq. (Compl. at 1, 7.) Defendants removed the action to this Court invoking its diversity jurisdiction. (Notice of Removal (Doc. No. 1).) Genesis Insurance Co. ("Genesis") and General Reinsurance Corp. ("General") brought a joint motion for summary judgment. All but two of the remaining reinsurers brought motions to dismiss.[2] Genesis, General, Zurich, Hartford, and NAFCO answered Carlson's Complaint. (Answers (Doc. Nos. 11, 12, 22, 23, 24).) All of the moving Defendants[3] raise the same central argument: that this Court lacks subject matter jurisdiction over them because there is no actual case or controversy between Carlson and the movants, as required by U.S. Const. Article III, § 2, cl. 1. For the reasons set forth below, the Court will grant the motions and will dismiss all reinsurers from this case.[4]

---

[2] The following Defendant reinsurers brought Rule 12(b) motions to dismiss: TIG Insurance Co. ("TIG"); Scor Reinsurance Co. ("Scor"); Sorema N.A. Reinsurance Co. ("Sorema"); Munich Reinsurance Co. ("Munich"); Swiss Reinsurance America Corp. ("Swiss America"); Swiss Reinsurance Co. ("Swiss"); and NAC Reinsurance Corp. ("NAC"). Two of the Defendant reinsurers did not bring motions to dismiss or for summary judgment: Zurich U.S. Insurance Co., a/k/a Zurich American Insurance Co. ("Zurich") and Hartford Fire Insurance Co. ("Hartford").

[3] For simplicity, the Court will refer to the moving parties collectively as the "movants."

[4] The district court has the obligation to assess its jurisdiction sua sponte at any time, even after trial, if it appears that jurisdiction may be lacking. Fed. R. Civ. P. 12(h)(3). The Court has assessed its jurisdiction with respect to all reinsurers and concludes that it lacks subject matter jurisdiction over the reinsurers. Therefore, based on the reasons set forth below, the Court will also dismiss Defendants Zurich and Hartford from this case.

## BACKGROUND

Carlson is a world-wide business that is dependent on the use of computers. (Compl. ¶ 21.) Carlson expended millions of dollars in order to avoid any losses as a result of various date change problems in Carlson's computers, most notably the Y2K problem. (Id. ¶ 21-22.) Carlson provided its primary insurer, NAFCO, a wholly-owned subsidiary of Carlson, with a "timely notice and proof of loss" for reimbursement of its expenses for the Y2K problem. (Id. ¶ 23.) NAFCO has not yet resolved Carlson's claim because it has not completed its investigation. (Answer of NAFCO ¶ 24.) Carlson commenced this suit against NAFCO seeking a declaration that its property policy with NAFCO covered the expenses it incurred for the Y2K problem and against NAFCO's reinsurers because they constituted "interested parties" pursuant to Minnesota's Declaratory Judgment Act. Minn. Stat. § 555.11.

Carlson seeks a determination that

1. the NAFCO policy provides coverage for the expenses Carlson incurred to avoid Y2K loss;

2. Carlson is entitled to damages from NAFCO in an amount in excess of Fifty Thousand Dollars ($50,000.00);

3 NAFCO is obligated to reimburse Carlson for the expenses it incurred in bringing this declaratory judgment action under the policy, including its attorney's fees, pre and post-judgment;

and for such other relief as the Court deems just and equitable. (Id. at 7, ¶¶ 1-4.)

The movants argue that there is no case or controversy between the reinsurers and Carlson because Carlson has not established that NAFCO will be obligated to pay any of

Carlson's claims. The movants further argue that there is no case or controversy because there is no contract between Carlson and the movants, and, as a matter of law, an insured does not have standing to sue a reinsurer. Carlson acknowledges that an insured cannot sue a reinsurer, but claims instead that (1) the Federal Declaratory Judgment Act gives the Court broader jurisdiction to hear these claims, and (2) allowing the case to go forward against the reinsurers will promote judicial economy. Alternatively, Carlson argues that, if this Court finds it does not have jurisdiction over the claims against the reinsurers, the Court should remand the case.

## ANALYSIS

### I. Rule 12(b)(1) Lack of Subject Matter Jurisdiction[5]

#### A. Standard of Decision

A defendant may challenge the court's subject matter jurisdiction over a controversy by motion under Rule 12(b)(1). That defense may never be waived; indeed,

---

[5] Although the movants have requested dismissal under Fed. R Civ. P 12(b)(1), 12(b)(6) and 56(c), the only appropriate rule for dismissal based on lack of subject matter jurisdiction is 12(b)(1). Fed. R. Civ. P. 12(b)(1). Each movant has requested relief based on the contention that there is no "actual case or controversy" between Carlson and the movants. (Mem. in Supp. of Rule 12(b) Mot. to Dismiss by NAC, Scor, Sorema, and Munich at 4-7; Mem. of Law in Supp. of TIG's Mot. to Dismiss at 6-8 (and Reply in Supp. of TIG's Mot. to Dismiss at 5-7); Mem. in Supp. of Rule 12(b) Mot. to Dismiss by Swiss America and Swiss at 4-6; Mem. of Law in Supp. of General and Genesis' Mot. for Summ. J. at 7-10.) The movants' argument that there is no actual case or controversy amounts to the contention that there is a "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937); Medtronic, Inc. v. Mine Safety Appliances Co., 468 F. Supp. 1132, 1134 (D. Minn. 1979) (holding that the requirement of an actual case or controversy is a jurisdictional prerequisite under the Constitution).

the district court has the obligation to assess its jurisdiction sua sponte at any time, even after trial, if it appears that jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3). A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. U.S., 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. See Osborn, 918 F.2d at 729 n.6. The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n.6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). See Titus, 4 F.3d at 593; Osborn, 918 F.2d at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn, 918 F.2d at 730.

The Court determines that the movants are making a factual challenge to Carlson's Complaint; therefore, the Court will consider matters outside the pleadings, Carlson does

not benefit from the safeguards of 12(b)(6), and Carlson has the burden of proving that this Court has jurisdiction over its claims against the movants.

**B. Reinsurers are not Liable to the Insured**

Minnesota law concerning reinsurance is clear. A reinsurance contract is a contract of indemnity between the reinsurer and the insurer – it operates solely for the benefit of the insurer. Schunk v. Hotchkiss, 231 Minn. 219, 224, 43 N.W.2d 104, 108 (1950). "There is no privity of contract between the insured and the insurer's reinsurer." Id.; see also Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 40, 57 N.W. 314, 314 (1893) (holding that reinsurance is a mere contract of indemnity).[6] "In such a contract the policy holders have no concern, are not the parties for whose benefit the contract of reinsurance is made, and they cannot, therefore, sue thereon." Barnes, 56 Minn. at 40, 57 N.W. at 314; see also Ainsworth v. General Reins. Corp., 751 F.2d 962, 965 (8th Cir. 1985).

The movants are all reinsurers of NAFCO's underlying policy with Carlson. As reinsurers, they have a legal relationship with NAFCO; they do not, however, have any legal relationship with Carlson. As such, there is no "justiciable controversy" between Carlson and the reinsurers.[7] Without a justiciable controversy between Carlson and the

---

[6] It is "widely recognized that [the] nature of the reinsurance relationships does not render the reinsurer directly liable to the original insured." Lee R. Russ, Couch on Insurance § 9:28 (3d 2000) (emphasis added) (citing to Allemannia Fire Ins. Co. v. Firemen's Ins. Co., 209 U.S. 326 (1908); Insurance Co. of N. Am. v. Hibernia Ins. Co., 140 U.S. 565 (1891); General Reinsurance Corp. v. Missouri General Ins. Co., 596 F.2d 330 (8th Cir. 1979) (further citations omitted)).

[7] A "justiciable controversy," as distinguished from a dispute that is hypothetical or abstract, "must be definite and concrete, touching the legal relations of parties having

reinsurers, any ruling by this Court with respect to Carlson's allegations against the reinsurers would be speculative and theoretical, and this Court does not have jurisdiction to issue advisory opinions based on speculation and theory. See U.S. Const. Article III, § 2, cl. 1.

## C. Federal Declaratory Judgment Act

Carlson acknowledges that an insured may not sue a reinsurer seeking to recover under a claim, but argues instead that this rule does not apply because the relief Carlson is seeking is one for declaratory judgment. Carlson asserts that the Federal Declaratory Judgment Act gives federal courts broader discretion in exercising its jurisdiction. The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). "Before a district court may render a declaratory judgment, there must be an actual controversy over which the court may exercise jurisdiction." Cygnus Therapeutics Sys., Inc. v. ALZA Corp., 92 F.3d 1153, 1158 (Fed. Cir. 1996) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937)), overruled on other grounds by Nobelpharma AB

---

adverse legal interests . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).

v. Implant-Innovations, Inc., No. 96-1463, 1998 WL 122399, at *8 (Fed. Cir. Mar. 20, 1998). "In general, the presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

The jurisdiction of federal courts to issue declaratory judgments is limited to "cases and controversies." Marine Equip. Mgmt. Co. v. U.S., 4 F.3d 643, 646 (8th Cir. 1993) (holding that the case or controversy requirement applies with equal force to actions for declaratory judgment); Minnesota Fed'n of Teachers v. Randall, 891 F.2d 1354, 1356 (8th Cir. 1989) (citing U.S. Const. Art. III). And "[w]hen there is no actual controversy, the court has no discretion to decide the case." B.P. Chems., Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir.1993). The only case or controversy involving Carlson in this matter is the determination of whether Carlson's policy with NAFCO covers its Y2K expenses. There is no legal relationship between Carlson and the reinsurers, and there is no case or controversy. Contrary to Carlson's assertions, this Court cannot extend its subject matter jurisdiction to cases not involving a case or controversy by virtue of the Federal Declaratory Judgment Act.

In the alternative, Carlson argues that, if the Federal Declaratory Judgment Act does not grant this Court broader jurisdiction, the Court should apply the Minnesota

Declaratory Judgment Act. Carlson acknowledges that declaratory judgment acts are procedural rules and, thus, in a diversity case the Federal Declaratory Judgment Act should apply. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (holding that the Declaratory Judgment Act is a procedural device). Carlson instead contends that the "outcome determinative test" applies in this situation. The "outcome determinative test" states that, when a federal court is exercising its diversity jurisdiction, the outcome should be the same as it would be if the case were tried in state court. Guaranty Trust Co. v. York, 326 U.S. 99, 109-10 (1945). Carlson, however, has not given the Court any authority for the proposition that the Minnesota Declaratory Judgment Act grants courts broader jurisdiction to hear cases than the Federal Declaratory Judgment Act. Nor has Carlson offered any authority for the proposition that the Minnesota act should be applied when a federal court does not have subject matter jurisdiction under the Federal act. The Court, therefore, will not evaluate its subject matter jurisdiction under the Minnesota Declaratory Judgment Act.

### D. Follow the Fortunes Doctrine

Carlson contends that the "follow the fortunes" doctrine gives the reinsurers a vital stake in the outcome of this case, and "if this Court finds that there is coverage for the Y2K remediation expenses under the NAFCO policy, the reinsurers will be required to pay millions of dollars for the covered claim." (Pls.' Opp'n Mem. at 11.)

A "follow the fortunes" clause in a reinsurance contract obligates the reinsurer to indemnify the original insurer for any payments the original insurer makes for claims

covered by the underlying insurance. Mountain States Mut. Cas. Co. v. Peerless Cas. Co., 160 F. Supp. 303, 307 (D. Mont. 1958) ("The reinsurer automatically follows in every respect the fortunes of the original insurance company on every policy reinsured."). Thus, "[t]he purpose of a 'follow the fortunes' clause is to preclude wasteful relitigation by a reinsurer of defenses to underlying policy coverage in cases where the original insurer has in good faith paid a settlement or judgment which is reasonably encompassed within the bounds of the [underlying] policy." Barry R. Ostrager and Thomas A. Newman, Handbook on Insurance Coverage Disputes, § 16.01 (9th ed. 1995); (emphasis added); Insurance Co. of N. Am. v. United States Fire Ins. Co., 322 N.Y.S.2d 520, 523 (Sup. Ct. N.Y. 1971); North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1199 (3d Cir. 1995) ("follow the fortunes" clauses prevent reinsurers from second guessing good-faith settlements and obtaining de novo review of judgments of the reinsured's liability to the original insurance company). "However, a reinsurer is not obligated under a 'follow the fortunes' provision to pay for a loss that is not covered by the underlying insurance." Id.; Stickel v. Excess Ins. Co. of Am., 23 N.E.2d 839, 842 (Ohio 1939); Thompson, Reinsurance, at 277, 284 (4th ed. 1966) (an insurance company may not go right outside the terms of its policy, and require nevertheless that the reinsurer follow).

The movants argue that the "follow the fortunes" clause in a reinsurance contract does not create a legal relationship between them and the original insured. In this case, there are eleven reinsurers to NAFCO's policy agreement with Carlson. Each reinsurer has a separate policy agreement with NAFCO, some of which may even contain "follow the fortunes" clauses. This clause, however, affects only the legal relationship between

NAFCO and the reinsurers; it does not *create* a legal relationship between Carlson and the reinsurers. The Court concludes, therefore, that Carlson's assertion that "follow the fortunes" clauses make the reinsurers "interested parties" in this lawsuit, such that the Court should exercise jurisdiction over them, is without merit. Even though the reinsurers may have an "interest" in whether NAFCO will be liable to Carlson, that does not create an actual controversy between Carlson and the reinsurers. See 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act requires an actual controversy within its jurisdiction in order to declare the rights and legal relationships between Carlson and the reinsurers). As discussed above, there is no case or controversy between Carlson and the reinsurers, and the fact that some reinsurers may be more interested than others in the outcome of this case because their reinsurance contracts with NAFCO contain a "follow the fortunes" clause does not create a case or controversy between the reinsurers and Carlson.[8]

### E. Remand to State Court

Carlson argues that if the Court concludes that the reinsurers should be dismissed from this action, then the Court should remand the case rather than dismiss it. (Pls.' Opp'n Mem. at 23) (citing 28 U.S.C. § 1447(c).) Section 1447(c) states: "If at any time

---

[8] Carlson also contends that this Court should exercise jurisdiction over the reinsurers because it would promote judicial economy. The Court finds the opposite to be true. Most of the Defendant reinsurers are incorporated in various states throughout the country, Munich is a German corporation, and Swiss and Swiss America are Swiss corporations. Requiring these corporations to remain in this case would certainly not promote judicial economy – especially since the outcome of the case will only determine NAFCO's liability and not the reinsurers' liability. Moreover, a finding that NAFCO is not liable to Carlson will have made the reinsurers' presence in this case completely unnecessary.

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). However, the Court does not lack subject matter jurisdiction over the case–only over Carlson's claims against the reinsurers. The Court has jurisdiction to hear the claims between Carlson and NAFCO pursuant to its diversity jurisdiction–Carlson is a Minnesota corporation and NAFCO is a Bermuda corporation. 28 U.S.C. § 1332. Therefore, the Court concludes that remand is not required in this case.

## CONCLUSION

For the foregoing reasons, and based upon all of the files, records, and proceedings herein, the Court finds that it lacks subject matter jurisdiction over the Defendant reinsurers, and **IT IS ORDERED** that

(1) NAC, Scor, Sorema and Munich's Motion to Dismiss (Doc. No. 19) is **GRANTED**;

(2) Swiss and Swiss America's Motion to Dismiss (Doc. No. 41) is **GRANTED**;

(3) TIG's Motion to Dismiss (Doc. No. 29) is **GRANTED**; and

(4) the Court will **DISMISS**, sua sponte, Defendants General, Genesis, Hartford and Zurich; and

(5) General and Genesis' Motion for Summary Judgment (Doc. No. 34) is **DENIED AS MOOT**.

Carlson's claims against NAC, SCOR, Sorema, Munich, Swiss, Swiss America, TIG, General, Genesis, Hartford, and Zurich are **DISMISSED WITHOUT PREJUDICE**.

The Court expressly determines that there is no just reason for delay and expressly directs the Clerk of Court to enter final judgments in accordance with this Memorandum Opinion and Order.

January 8, 2000

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JAN 08 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995